IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DEBRA JURIK JONES, | ) |
| Plaintiff, | ) |
| v. | ) Civil Action No. 2:16-1308 |
| WASHINGTON HEALTH SYSTEM A/K/A WASHINGTON HOSPITAL, | ) |
| Defendant. | ) |

**MEMORANDUM OPINION**

**Cercone, Senior District Judge**

**I.    Introduction**

This matter is before the court upon a Motion for Summary Judgment filed by Defendant Washington Health System ("Defendant" or "Washington Hospital") (ECF No. 32). Also before the court is a Partial Motion for Summary Judgment filed by Plaintiff Debra Jurik Jones ("Plaintiff" or "Jones") (ECF No. 30). For the reasons that follow, Defendant's Motion will be granted and Plaintiff's Motion will be denied.

**II.    Factual Background**

From November 1, 1982 through June 30, 2014, Defendant employed Plaintiff as a nurse anesthetist. Defendant's Concise Statement of Material Facts ("Def. CSMF") (ECF No. 33) ¶ 1; Plaintiff's Concise Statement of Material Facts ("Pl. CSMF") (ECF No. 38) ¶ 1. In 2014, Defendant entered into a contract with Keystone Anesthesia ("Keystone") to provide anesthesia services. Def. CSMF ¶ 3; Pl. CSMF ¶ 9. Although Plaintiff was offered continued employment with Keystone, she declined, resulting in her termination. Def. CSMF ¶¶ 5-6; Pl. CSMF ¶ 9. As

of the date of her termination – June 30, 2014 – Plaintiff had accumulated 576 hours of sick time and was 57 years old. Def. CSMF ¶¶ 7-8.

During the course of Plaintiff's employment, Defendant offered guidance to employees in the form of an Employee Handbook. The preamble to each relevant version of Defendant's Employee Handbook states:

> The policies stated in this handbook are guidelines only and are subject to change at the sole discretion of the Hospital. This handbook should not be construed as and does not constitute a contract guaranteeing employment for any specific duration. Although we hope that your employment relationship with us is long-term, either you or the Hospital may terminate this relationship at any time, for any reason.

Def. CSMF ¶ 11; ECF No. 42 at 6.

With respect to sick time, the Employee Handbook in effect at the time of Plaintiff's termination permitted employees to earn up to 96 hours of sick time per year and to accumulate up to 608 hours of sick time. Def. CSMF ¶¶ 13-14; Pl. CSMF ¶ 5. Prior to 2009, employees were also permitted to "buy back" sick time pursuant to a "Buy Back Sick Time Policy." Def. CSMF ¶ 19; Pl. CSMF ¶ 6. Pursuant to that policy, Defendant agreed to "buy back" portions of an employee's sick time upon request, provided the employee satisfied a number of conditions. Def. CSMF ¶¶ 23-24. However, the Buy Back Sick Time Policy was eliminated in 2009 and was not included in Employee Handbooks issued after that date, including the handbook in effect at the time of Plaintiff's termination. Def. CSMF ¶¶ 21, 41; Pl. CSMF ¶ 8.

III. **Standard of Review**

Summary judgment may only be granted where the moving party shows that there is no genuine dispute as to any material fact, and that a judgment as a matter of law is warranted. FED. R. CIV. P. 56(a). Pursuant to Federal Rule of Civil Procedure 56, the court must enter summary

2

judgment against a party who fails to make a showing sufficient to establish an element essential to his or her case, and on which he or she will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). In evaluating the evidence, the court must interpret the facts in the light most favorable to the nonmoving party, drawing all reasonable inferences in his or her favor. Watson v. Abington Twp., 478 F.3d 144, 147 (3d Cir. 2007). The burden is initially on the moving party to demonstrate that the evidence contained in the record does not create a genuine issue of material fact. Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 140 (3d Cir. 2004). A dispute is "genuine" if the evidence is such that a reasonable trier of fact could render a finding in favor of the nonmoving party. McGreevy v. Stroup, 413 F.3d 359, 363 (3d Cir. 2005). Where the nonmoving party will bear the burden of proof at trial, the moving party may meet its burden by showing that the admissible evidence contained in the record would be insufficient to carry the nonmoving party's burden of proof. Celotex Corp., 477 U.S. at 322. Once the moving party satisfies its burden, the burden shifts to the nonmoving party, who must go beyond his or her pleadings and designate specific facts by the use of affidavits, depositions, admissions or answers to interrogatories showing that there is a genuine issue of material fact for trial. Id. at 324. The nonmoving party cannot defeat a well-supported motion for summary judgment by simply reasserting unsupported factual allegations contained in his or her pleadings. Williams v. Borough of West Chester, 891 F.2d 458, 460 (3d Cir. 1989).

## IV. Discussion

Plaintiff contends that she is entitled to payment for her unused sick days pursuant to the Pennsylvania Wage Collection Law, 43 P.S. § 260.2(a) ("WPCL"), and the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq* ("FLSA"). Plaintiff relies exclusively on the Employee Handbooks

3

issued by Defendant, arguing that those handbooks created an express and/or implied contractual right to payment for unused sick time upon her termination. Defendant counters that the Employee Handbooks explicitly disclaim any contractual rights and provide no provision for payment for unused sick time upon retirement or termination. Each of Plaintiff's claims will be addressed in turn.

**A. Fair Labor Standards Act (Count I)**

Plaintiff first alleges that she is entitled to payment for her unused sick time based upon Section 207(o)(4) of the FLSA. This claim fails for at least three reasons. First, the FLSA subsection upon which Plaintiff relies, Section 207(o)(4), relates only to unused compensatory time, rather than accrued sick time.[1] Second, it is well-settled that "the FLSA does not provide recovery for accrued vacation and sick time." Hartman v. White Hall Pharmacy, LLC, 112 F.Supp.3d 491, 493 (N.D.W.V. 2015); Sosnowy v. A.Perri Farms, Inc., 764 F.Supp.2d 457, 462-63 (E.D.N.Y. 2011) (same); Arjumand v. Laguardia Associates, L.P., 2015 WL 1470470, at *5 (E.D.N.Y. Mar. 30, 2015) (noting that claims for unpaid vacation or sick days "are never cognizable under FLSA"). Finally, even if the FLSA did create a cause of action for unpaid sick time, Plaintiff's FLSA claim would be time-barred. An FLSA claim based on a non-willful violation of the statute must be commenced within two years of the employer's failure to pay the required compensation for any particular workweek.[2] 29 U.S.C. § 255(a); 5 C.F.R. § 551.702(b).

---

[1] Section 207(o)(4) provides, in pertinent part, that an employee who has accumulated "compensatory time" as defined in the statute shall be paid for that compensatory time upon termination of their employment. 29 U.S.C. § 207(o)(4). Section 207(o)(4) does not reference sick or vacation time.

[2] While the statutory limitations period is extended to three years for "willful" violations of the statute, see 29 U.S.C. 255(a), Plaintiff has failed to adduce any evidence in this regard.

4

Plaintiff filed her complaint on August 26, 2016, more than two years after the effective date of her termination.

Perhaps recognizing these principles, Plaintiff declined to address Defendant's FLSA-based arguments in any of her briefs. See ECF Nos. 30, 42. For each of the foregoing reasons, summary judgment will be granted in favor of Defendant with respect to Plaintiff's FLSA claim.

### B. Pennsylvania Wage Collection Law (Count II)

Plaintiff next seeks relief pursuant to the WPCL. In broad brush, the WPCL requires employers to pay an employee any "wages or compensation earned" at the time of the employee's separation from employment. 43 P.S. § 260.5(a). The WPCL defines wages as "all earnings of an employee, regardless of whether determined on time, task, piece, commission or other method of calculation." Id. § 260.2a. Wages include any fringe benefits that the employer provides. Id.

The WPCL does not create a statutory right to compensation, but "provides a statutory remedy when the employer breaches a contractual obligation to pay earned wages." Costenbader v. Classic Design Homes, Inc., 2010 WL 597456, at *5 (M.D. Pa. Feb. 16, 2010) (citing Weldon v. Kraft, Inc., 596 F.2d 793, 801 (3d Cir. 1990)). Consequently, "a prerequisite for relief under the WPCL is a contract between employee and employer that sets forth their agreement on wages to be paid." Nagle v. Comprehensive Women's Health Services, P.C., 2018 WL 1473833, at *14 (M.D. Pa. Jan. 19, 2018) (quoting sources omitted); Razak v. Uber Techs., 2016 WL 5874822, at *9 (E.D. Pa. Oct. 7, 2016) ("Relief under the WPCL is implausible without [the] existence of a contract."). "The contract between the parties governs in determining whether specific wages are earned." Weldon, 896 F.2d at 801.

Applying these principles, Plaintiff's WPCL claim rests on her ability to demonstrate that she was contractually entitled to payment for her unused sick time at the time of her termination. She initially attempts to meet this burden by asserting that the Employee Handbooks issued by Defendant represent express written contracts. This contention fails for several reasons.

First, each of the Employee Handbooks issued by Defendant explicitly states that "[t]he policies stated in this handbook are guidelines only and are subject to change at the sole discretion of the Hospital." The handbooks further caution that they "should not be construed as and [do] not constitute a contract guaranteeing employment for any specific duration." Courts have repeatedly held that this type of disclaimer is sufficient to preclude a breach of contract claim based on policies set forth in an employee handbook. See, e.g., Martin v. George Junior Republic in Pennsylvania, 2015 WL 5472885, at *3-5 (W.D. Pa. Sep. 16, 2015) (rejecting a contractual relationship because "Defendants expressly disavowed any intent to contract with Plaintiffs" in the handbook, precluding any reasonable person from concluding that a contract existed or that "Defendants otherwise intended to be bound by the provisions in the Handbook); Henderson v. Nutrisystem, Inc., 634 F.Supp.2d 521, 535 (E.D. Pa. 2009) (declining to find a contractual relationship based on disclaimers in the employee handbooks stating that employees "can be terminated with or without cause and with or without notice" and that the "policies, benefits and procedures" in the employee handbook can be unilaterally changed at any time); Baron v. Quad Three Grp., Inc., 2013 WL 3822134, at *6-7 (Pa. Super. Ct. Jan. 22, 2013) (same). Rather, for a contract to exist under such circumstances, "[t]he handbook must contain a clear indication that the employer intended to overcome the at-will presumption" and extend a unilateral contract for certain benefits or continued employment. Braun v. Wal-Mart Stores, Inc., 24 A.3d 875, 941 (Pa. Super. Ct. 2011) (citing Caucci v. Prison Health Servs., Inc., 153 F.Supp.2d 605 (E.D. Pa. 2011)

(noting that an employee handbook is only enforceable against an employer if "a reasonable person in the employee's position would interpret its provisions as evidencing the employer's intent to supplant the at-will rule and be bound legally by its representations in the handbook")). In light of the explicit disclaimer language cited above, no reasonable employee could conclude that the Employee Handbooks issued to Plaintiff represented a binding written contract.

Plaintiff attempts to distinguish this case from Henderson and Martin by arguing that the exclusionary language in the preamble of Defendant's Employee Handbooks "only addresses the fact that the Handbook does not create a contract guaranteeing any duration of employment with the Hospital," but is "conspicuously" silent regarding "compensation and benefits." See ECF No. 42 at 16. This is simply inaccurate. The very first sentence in the preamble of Plaintiff's Employee Handbook states that "[t]he policies in this handbook are guidelines only and are subject to change in the sole discretion of the Hospital." Id. (emphasis added). Moreover, even if such a distinction could be drawn, Plaintiff has failed to cite any caselaw suggesting that this distinction forms a sufficient legal basis to overcome the handbook's disclaimer provision and create an express contractual relationship.

Finally, even if the Employee Handbooks issued to Plaintiff did somehow create an express contractual relationship, she has failed to demonstrate that the handbooks entitle her to the benefits that she is seeking. Although the handbooks clearly establish a procedure through which employees may earn and accrue sick time, Plaintiff concedes that the handbooks do not address "what happens if the employee terminates his/her employment with an excess of earned and accrued sick time." See ECF No. 42 at 4. A similar scenario was presented in Harding v. Duquesne Light Co., 882 F.Supp. 422, 428 (W.D. Pa. 1995). In Harding, the defendant had a written "Vacation Policy" that specified "four situations in which an employee is entitled to payment for

unused but accrued vacation time" but was "silent . . . on whether an employee who is fired is entitled to a vacation allowance." Id. After reviewing the record as a whole, the court concluded that the plaintiff had "fail[ed] to present any evidence at all regarding a contractual entitlement to vacation pay." Id. For example, the court noted that the plaintiff could not cite any statements from management suggesting that discharged employees commonly received vacation pay or point to a consistent practice or policy of providing vacation pay under such circumstances. Id. In the absence of "any other evidence to rebut [defendant's] position," the court found plaintiff's claim for benefits to be "untenable." Id.

As in Harding, Plaintiff has completely failed to adduce any evidence that Defendant had a policy or practice of paying employees for accrued sick time upon termination or retirement. To the extent that Plaintiff relies on the record at all, she appears to suggest that the existence of a Buy Back Sick Time Policy in older versions of the Employee Handbook obligated Defendant to pay her for her sick time upon her termination. Even if that policy somehow related to the payment of benefits upon termination, which it does not, that policy was terminated in 2009 and did not appear in the Employee Handbook in effect at the time of Plaintiff's termination.[3] Her reliance on an outdated and unrelated buy back policy does not comprise sufficient evidence to establish that Defendant had a "consistent practice" of paying discharged employees for accrued sick time. Harding, 882 F.Supp. at 428.

Finally, Plaintiff argues that, even if the Employee Handbook did not constitute a written employment contract, it still represents evidence of an implied contractual right to payment for unused sick time at the time of an employee's termination or retirement. See Oxner v. Cliveden

---

[3] Indeed, any attempt to seek benefits on the basis of the 2009 Employee Handbook would be untimely. See 42 P.S. § 5525 (specifying a four-year statute of limitations for actions on a contract).

8

Nursing & Rehab. Ctr. PA, L.P., 132 F.Supp.2d 645, 649 (E.D. Pa. 2015) ("Where an employee does not work under a written employment contract or collective bargaining agreement, the employee will have to establish the formation of an implied oral contract to recover under the WPCL."). "Under Pennsylvania law, an implied contract arises when parties agree on the obligation to be incurred, but their intention, instead of being expressed in words, is inferred from the relationship between the parties and their conduct in light of the surrounding circumstances." Id. "A promise to pay for services can only be implied . . . in circumstances under which the party rendering the services would be justified in entertaining a reasonable expectation of being compensated by the party receiving the benefit of those services." Id. "[W]here a plaintiff fails to adduce facts to show that the employer intended to obligate itself to pay wages in exchange for valuable services, then a WPCL [claim] fails as a matter of law." Id at 650-51.

Plaintiff's attempt to demonstrate an implied contractual relationship fails for many of the same reasons outlined above. In order to establish an implied contract, Plaintiff "would have to establish, at a minimum, an implied oral contract between the employee and employer." De Asencio v. Tyson Foods, Inc., 342 F.3d 301, 309 (3d Cir. 2003). As noted above, Plaintiff cannot meet this burden by relying on the Employee Handbooks issued by the Defendant, as those documents explicitly disclaim any contractual status and fail to provide a clear right to payment for sick pay upon termination. Nor has Plaintiff cited any other practices, policies, or conduct by Defendants implying that employees were promised such benefits. Simply put, the record is devoid of any evidence from which the court might infer that an employee such as Plaintiff was entitled to payment for sick time upon retirement or termination. In the absence of any such evidence, no implied contract can be inferred. Oxner, 132 F.Supp.2d at 649.

For each of these reasons, Plaintiff's claims based on the WPCL are untenable. Defendant's Motion for Summary Judgment as to Count II of the Complaint will be granted.

**V.     Conclusion**

For the reasons set forth above, Defendant's Motion for Summary Judgment will be GRANTED. Plaintiff's Partial Motion for Summary Judgment will be DENIED. Judgment will be entered in favor of Defendant and the Clerk will be directed to mark the case closed. Appropriate orders will follow.

Dated:  March 29, 2018

s/David Stewart Cercone
David Stewart Cercone
Senior United States District Judge

cc:     Neil J. Marcus, Esquire
       Phillip J. Binotto, Jr., Esquire
       Marcia L. DePaula, Esquire

       (*Via CM/ECF Electronic Mail*)